**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FUJIFILM NORTH AMERICA CORPORATION,<br><br>    Plaintiff,<br><br>       v.<br><br>PLR IP HOLDINGS, LLC and PLR BRAND SERVICES, LLC,<br><br>    Defendants | Case No.:  1:17-cv-08796 (NRB)<br><br><br>**FIRST AMENDED COUNTERCLAIMS AND DEFENDANTS' ANSWER & <u>AFFIRMATIVE DEFENSES</u>** |
| PLR IP HOLDINGS, LLC, PLR BRAND SERVICES, LLC, IMPOSSIBLE B.V., and IMPOSSIBLE AMERICA CORP., d/b/a POLAROID ORIGINALS,<br><br>    Counterclaim Plaintiffs,<br><br>       v.<br><br>FUJIFILM NORTH AMERICA CORPORATION and FUJIFILM CORPORATION,<br><br>    Counterclaim Defendants | |

Counterclaim Plaintiffs PLR IP Holdings, LLC ("PLR IP"), PLR Brand Services, LLC, Impossible B.V., and Impossible America Corp. (d/b/a Polaroid Originals) (collectively, "Polaroid") set forth their First Amended Counterclaims against Counterclaim Defendants Fujifilm North America Corporation and Fujifilm Corporation (collectively "Fujifilm"). In addition, Defendants PLR IP Holdings, LLC and PLR Brand Services, LLC ("Defendants") set forth their Answer and Affirmative Defenses to the Complaint for Declaratory Judgment filed by Plaintiff Fujifilm North America Corporation ("Plaintiff").

1

## COUNTERCLAIMS

1.      Polaroid is an American institution that redefined photography through its pioneering development of instant photography more than seventy years ago, and through its continued modernization and creation of innovative camera and film products over the past several decades. Today, Polaroid remains among the most well-known camera and film brands in the United States.

2.      Since 1972, Polaroid, together with its predecessors and licensees, has sold a wide variety of products bearing its distinctive and famous "Classic Border Logo," which consists of a vertically-oriented rectangle surrounding a smaller inner square, with the square positioned in a way that creates the visual impression of thin, typically white, borders along the top and sides and a thicker, typically white, border along the bottom, as depicted below:



3.      As perhaps the most iconic visual symbol of the Polaroid brand and recognizable in virtually every household across the country, the Classic Border Logo is extremely valuable and represents enormous goodwill. On numerous occasions, the U.S. Patent and Trademark Office has granted PLR IP federal trademark registrations covering the Classic Border Logo, covering a wide variety of photography-related products.

4.     During the early 2000s, as digital cameras became inexpensive and as mobile phones could instantly capture and save digital images, consumer interest in physical photographs and non-digital cameras began to wane. While this posed financial difficulties for Polaroid, and prompted it to go through bankruptcy in 2001 and 2008, Polaroid weathered the storm, remaining actively involved in licensing and marketing instant-photography products throughout that period.

5.     Consumer interest in instant – but *classic, physical* – photography has been on the rise during the past several years, with sales of instant cameras, and instant film increasing year over year. As the brand that is most closely associated with instant film, and with the Classic Border Logo serving as a visual beacon for "real" or "original" instant film, Polaroid has been and remains uniquely positioned to build on this resurgence of consumer interest in instant film and cameras with innovative products featuring the Classic Border Logo.

6.     Fujifilm, a Japanese multinational corporation headquartered in Tokyo, has become the dominant participant in the U.S. instant film and camera market. Indeed, Fujifilm currently holds more than 80% of the overall U.S. instant photography market and approximately 99% of the U.S. instant analog film market, on information and belief. Fujifilm built its enormous market share with sales of two other instant-film formats not at issue in the present dispute – the Instax Mini and the Instax Wide.

7.     Apparently unsatisfied with its 99% market share, and in an obvious attempt to drive out its primary competitor and to obtain a complete monopoly over the instant analog film market, Fujifilm recently began to sell instant film and camera products under the name "Instax Square" that exploit Polaroid's enormous popularity and consumer recognition by using a confusingly similar – if not virtually identical – imitation of Polaroid's Classic Border Logo:

3

**Polaroid Classic Border Logo Film**     **Fujifilm's "Instax Square" Film**

   

8.      Fujifilm's effort to blatantly copy the Classic Border Logo has not gone without notice. An article from *Time* magazine declared that Fujifilm's square instant film "will mimic Polaroid's famous square format."[1] An article in *Paste* stated that in buying Fujifilm's Instax Square film, consumers will be "paying a premium for the square aspect ratio and the nostalgic Polaroid feel."[2] In addition, *Popular Science* explained that demand for Fujifilm's Instax cameras and square-format film is driven by those who want "to relive the nostalgia derived from Polaroid-style prints," explaining that "[t]he Instax Square film emulates the same aspect ratio of Classic Polaroid prints" and that its "square shape is important because it evokes the

---

[1] Laurent, Olivier, "This is Why Film Photography is Making a Comeback," *Time*, Jan. 6, 2017.
[2] Nguyen, Chuong, "Fujifilm Instax SQ-10 Review: Photo Sharing for the Instagram Generation," *Paste Magazine*, July 31, 2017.

classic Polaroid films."[3] Finally, a product review in *PC Magazine* described a Fujifilm Instax Square camera as using "Polaroid throwback" film.[4]

9.      Fujifilm's careful imitation of the Classic Border Logo is no accident, nor is it "necessary" for technical reasons; rather, it is a calculated effort to trade on the enormous goodwill of the Classic Border Logo and to confuse the public into believing that Fujifilm's Instax products are put out by, or with the sponsorship or approval of, Polaroid.

10.     Fujifilm's preemptive claim for relief in its Complaint – essentially asking the Court to declare that the Classic Border Logo is not protectable as a trademark – is not only legally and factually untenable, it flies in the face of Fujifilm's own acknowledgement of Polaroid's trademark rights. Pursuant to a 2011 Sales & Purchase Agreement, Fujifilm manufactured and distributed Polaroid-branded instant film bearing the Classic Border Logo for many years prior to filing its declaratory-judgment action. Packaging that Fujifilm manufactured and distributed explicitly stated: "Polaroid, Polaroid & Pixel, **Polaroid Classic Border Logo**, and Polaroid Color Spectrum **are trademarks of PLR IP Holdings, LLC, used under license**." (Emphasis added). As a former licensee, Fujifilm is now estopped from challenging the validity of the Classic Border Logo as a trademark.

11.     This is an action at law and in equity to protect the public from confusion, to protect the valuable and iconic Classic Border Logo from counterfeiting, infringement, and dilution, and to stop Fujifilm's bad faith attempts to trade on the goodwill and popularity of the Polaroid brand. Specifically, Polaroid counterclaims for counterfeiting, trademark infringement, unfair competition, dilution, and unfair business practices, arising under the Trademark Act of

---

[3] Horaczek, Stan, "Fujifilm's New Instant Digital Camera is a Reminder that Film is Not Dead," *Popular Science*, Apr. 19, 2017.
[4] Fisher, Jim, "Fujifilm Instax Square SQ10," *PC Magazine*, June 15, 2017.

1946, 15 U.S.C. §§ 1051 *et seq.* (2017) (the "Lanham Act"); the anti-dilution laws of several states, including New York General Business Law § 360-l (McKinney 2017); the fair business practices and unfair and deceptive trade practices acts of the several states, including New York General Business Law § 349 (McKinney 2017); and the common law.

## PARTIES

12.    Counterclaimant PLR IP Holdings, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 4350 Baker Road, Minnetonka, Minnesota 55343. Counterclaimant PLR IP Holdings, LLC is the successor-in-interest to Polaroid Corporation with regard to all Polaroid trademarks, including the Classic Border Logo.

13.    Counterclaimant PLR Brand Services, LLC, a wholly-owned subsidiary of PLR IP Holdings, LLC, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 4350 Baker Road, Minnetonka, Minnesota 55343. Counterclaimant PLR Brand Services, LLC, is involved in the distribution and sale of Polaroid-branded products, including products bearing the Classic Border Logo.

14.    Counterclaimant Impossible B.V. is a Dutch company based in the Netherlands, with its principal place of business at Hoge Bothofstraat 45, 7511 ZA Enschede, the Netherlands. Counterclaimant Impossible B.V. is responsible for rejuvenation and innovation, focusing on the development, manufacture, and distribution of new Polaroid-branded products, including those offered for sale and sold in the United States bearing the Classic Border Logo.

15.    Counterclaimant Impossible America Corp. is a New York corporation with its principal place of business at 195 Montague St., Unit 1457, Brooklyn, NY 11201. Counterclaimant Impossible America Corp. does business as "Polaroid Originals," and is

6

involved in the marketing, promotion, and distribution of new Polaroid-branded products, including those offered for sale and sold in the United States bearing the Classic Border Logo. Counterclaimant Impossible B.V. and Counterclaimant Impossible America Corp. are collectively referred to in this Counterclaim as the "Impossible Project."

16.    On information and belief, Counterclaim Defendant Fujifilm North America Corporation is a New York corporation organized and existing under the laws of the State of New York, with its office and principal place of business at 200 Summit Lake Drive, Valhalla, New York 10595.

17.    On information and belief, Counterclaim Defendant Fujifilm Corporation is a Japanese corporation organized and existing under the laws of Japan, with its office and principal place of business at 7-3, Akasaka 9-chome, Minato-ku, Tokyo, Japan. On further information and belief, Counterclaim Defendant Fujifilm Corporation is responsible for global development and distribution of Fuji-branded products, including the infringing "Instax Square" products. On further information and belief, Counterclaim Defendant Fujifilm Corporation directs and controls the activities of its subsidiary Counterclaim Defendant Fujifilm North America Corporation, including with regard to the unlawful acts described in this Counterclaim.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Polaroid's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367. Additionally, this Court has supplemental jurisdiction over Polaroid's Counterclaims because they form part of the same case or controversy as the claims asserted in the declaratory-judgment Complaint.

19.     This Court has personal jurisdiction over Counterclaim Defendants because these parties have distributed, offered for sale, or sold infringing merchandise within this State, have engaged in acts or omissions within this State causing injury, have manufactured or distributed products used or consumed within this State in the ordinary course of trade, or have otherwise made contacts with this State sufficient to permit the exercise of personal jurisdiction.

20.     Venue is proper because one Counterclaim Defendant resides in this District, 28 U.S.C. § 1391(b)(1), the foreign Counterclaim Defendant is subject to personal jurisdiction in this District, 28 U.S.C. § 1391(b)(3), and because a substantial part of the acts or omissions giving rise to Polaroid's Counterclaims occurred in this District, 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.     Being the leader in the development of instant cameras and instant film, Polaroid has remained one of the world's most famous brands since its inception 80 years ago. From the creation of the instant-print camera in 1947, to the creation of the instant-print film in 1963, to the Polaroid Pop and Polaroid OneStep 2 cameras in 2017, Polaroid remains a pioneer deserving of its accolades having withstood the test of time.

22.     At least as early as 1972, Polaroid began using the distinctive Classic Border Logo on its instant cameras and instant film sold in the United States. The Classic Border Logo quickly came to be associated exclusively with Polaroid and the Polaroid brand. Just as the name Polaroid signifies heritage, superiority, and quality in the photography industry, the Classic Border Logo has long represented the fame, ingenuity, and quality promise of the Polaroid brand.

23.     Examples of products and packaging bearing the Classic Border Logo are depicted below.











24.     The Classic Border Logo is well-known and famous and has been for many years. In fact, both Polaroid and its Classic Border Logo have been featured on the cover of *LIFE magazine* and *TIME magazine*, as early as 1972, as depicted below.

 

25.     Since introducing its Classic Border Logo, Polaroid has spent many millions of dollars promoting the mark and products bearing the mark. For example, in 1972, Polaroid spent

$20 million on an advertising campaign with actor Sir Laurence Olivier as the spokesman. Then, in 1976, Polaroid spent $4 million on an advertising campaign with actor Alan Alda as the spokesman. Actor James Garner took over the role later on. From 1977 to 1983, Polaroid hired actress Mariette Hartley to serve as spokeswomen with James Garner for the Polaroid brand. Polaroid continued to spend millions of dollars in ad campaigns but decided to realign itself with a younger market. In 1998, Polaroid launched a new camera promoted by the Spice Girls. Into the 2000s, Polaroid teamed up with a number of musical artists including Britney Spears, the Backstreet Boys, and OutKast. In more recent years, like many major brands, Polaroid has focused its marketing efforts on content creators and social influencers in lieu of spokespeople.

26.     In 2010, Lady Gaga, the ultimate social influencer, not only collaborated with Polaroid, but was named its Creative Director and introduced a specialty line of Polaroid products. The singer of world famous hits including *Bad Romance*, *Just Dance*, and *Poker Face*, just to name a few, six-time Grammy award winner, award-winning fashion designer, and activist, Lady Gaga, wanted to expand into the technological and photographic arena and saw an opportunity in Polaroid. Polaroid provided Lady Gaga the perfect opportunity to blend the iconic history of Polaroid with the artist's innovative style. Together, Lady Gaga and Polaroid created a new line of Polaroid products called the "Grey Label," which, as depicted below, continued to pay homage to Polaroid's classic designs, including the Classic Border Logo.





27.     In 2014, Polaroid collaborated with Taylor Swift for the singer's record breaking album *1989*. The very album that sold over 1.2 million copies in the first week alone and more than 8.6 million copies worldwide, that was number one on Billboard's 200 albums chart, that was the biggest-selling album released in 2014, and that included the world famous songs *Bad Blood*, *Wildest Dreams*, *Blank Space*, and *Shake It Off*, prominently featured a Polaroid photograph of Taylor Swift surrounded by the Classic Border Logo on the album cover, depicted below. Hipster and vintage being the new mainstay of any brand, Taylor Swift's *1989* album helped reinvigorate what has been deemed to be "one of the world's most iconic tech brands." As another facet of this collaboration, Taylor Swift's album featured 13 collectible Polaroid

photos that featured the Polaroid Classic Border Logo, examples of which are depicted below.

The *1989* album not only paid homage to the singer's birth year, but also to Polaroid and its

Classic Border Logo. As a result of this collaboration, Polaroid experienced an uptick in sales

with a whole new generation appreciating the Polaroid brand.





28.     Unsolicited media, including numerous articles and books describing Polaroid and

the Polaroid brand, have made use of and reference the Classic Border Logo. Examples include:

- "the iconic white-framed border" (Grigonis, Hillary, "Got Color? Polaroid Originals Launches Duochrome Instant Film," *Digital Trends*, Nov. 3, 2017),

- "[t]he classic border logo" (Koerber, Brian, "Polaroid Just Reinvented its Iconic Camera," *Mashable*, Jan. 7, 2017),

- "saying the word Polaroid still conjures [] images of those almost-square instant photo prints with white borders" (Horaczek, Stan, "CES 2017: Polaroid Pop Camera Spits Out Prints in a Classic Aspect Ratio," *Popular Photography*, Jan. 5, 2017),

- "the original Polaroid film with that characteristic white border" (Grigonis, Hillary, "Polaroid Launches an App-Based Photo Printing Service to Get Real Polaroid Prints From Your iPhone," *Digital Trends*, Oct. 7, 2016),

- "that's the photo with the wide white border that most of us think of as the classic Polaroid picture," Bonanos, Christopher, <u>Instant: The Story of Polaroid</u> 11 (2012), and

- "The white border, wider at the bottom *is* a recognizably distinctive feature of one type of Polaroid film. . . ." Buse, Peter, <u>The Camera Does the Rest: How Polaroid Changed Photography</u> 16 (2016).

29.     A few examples of books with prominent visual reference to the Classic Border logo appear below:



30.    Polaroid also has used traditional "look for" advertising, encouraging customers to use the Classic Border Logo as a means of identifying and distinguishing Polaroid products from those of competitors. For example, packaging for several products, including the Polaroid 300 Instant Camera- a product produced by Fujifilm pursuant to the Agreement discussed below-included the following statement (or language very similar):

> Instantly recognizable. Instantly reassuring. The Polaroid Classic
> Border and Polaroid Color Spectrum logos let you know you've
> purchased a product that exemplifies the best qualities of our brand
> and that contributes to our rich heritage of quality and innovation.

31.    The Classic Border Logo is nonfunctional in that it is not essential to the use or purpose of Polaroid products bearing the Classic Border Logo, nor does it favorably affect the cost or quality of such products. Moreover, Polaroid's exclusive use of the Classic Border Logo for many decades has not put any competitors at a significant non-reputation-related disadvantage.

32.    For decades, Polaroid extensively and continuously has used the Classic Border Logo in connection with is camera and film products. Over the years, Polaroid's sales of products bearing the Classic Border Logo have totaled over $30 billion. In 2016 alone, Polaroid had over fifty licensees of its Classic Border Logo, including Fujifilm. That same year, Polaroid's licensees generated nearly $400 million in sales of goods bearing the Classic Border Logo. To this day, licensed products bearing the Classic Border Logo are sold through major

U.S. channels, including Nordstrom, Macys, Urban Outfitters, Amazon, Wal-Mart, Best Buy, Target, Toys R' Us, and Walgreens.

33.     Even as it went through bankruptcies in the early 2000s, Polaroid has remained a household name and Polaroid continued to use and license the Classic Border Logo. When the Impossible Project acquired a Polaroid manufacturing facility in 2008, it promptly began rejuvenating the brand by embracing new technologies and launching new products, while staying true to its analog-instant-film heritage. With vintage becoming mainstream, the Impossible Project innovatively married digital controls with analog photography -- all under the Polaroid brand and the iconic Classic Border Logo. Through these and other adaptations, the Impossible Project has revitalized the Polaroid brand and expanded Polaroid's product line, enabling the brand to remain as relevant as ever.

34.     As a result of Polaroid's continuous use and promotion of the Classic Border Logo in connection with its products, the mark enjoys widespread public acceptance and association with Polaroid, and has come to be recognized widely and favorably by the public as an indicator of the origin of Polaroid's camera and film products. The Classic Border Logo has achieved fame among the general consuming public of the United States.

35.     Counterclaimant PLR IP is the owner of a valid and subsisting federal trademark registration, Reg. No. 5,284,186, issued by the United States Patent and Trademark Office on September 12, 2017, for the Classic Border Logo covering "photosensitive paper; photographic paper; unexposed camera film." A copy of the Certificate of Registration for this mark is attached as **Exhibit A**.

36.     Counterclaimant PLR IP is the owner of a valid and subsisting federal trademark registration, Reg. No. 5,284,187, issued by the United States Patent and Trademark Office on

September 12, 2017, for the Classic Border Logo covering "Cameras; analog cameras; one-time use cameras; home security cameras; digital cameras; video cameras; sporting cameras; rearview cameras for vehicles; dashboard cameras; bags and cases for cameras and photographic equipment; photographic viewfinders; photographic flash units for cameras; photographic and camera filters; mounting devices for photographic equipment; lenses for photographic apparatus and cameras; camera equipment, namely, flash lamps, lens filters for use with cameras, lens caps, batteries, shutters and lights for use with cameras; digital photo frames for displaying digital pictures, video clips and playing music; nautical and photographic apparatus and instruments, namely, underwater housings for cameras, underwater enclosures for cameras and underwater enclosures for photographic lenses; downloadable computer software for modifying the appearance and enabling transmission of photographs; photo printers; electronic docking stations; telephones; mobile phones; cell phones; memory cards; scanners; blank digital storage media; headphones; ear buds; audio speakers; Digital audio players; computer mice; computers; tablet computers; e-book readers; handheld computers; electronic cables; power cables, plug adaptors and battery packs for computers; computer stylus; protective display screen covers adapted for use with telephones." A copy of the Certificate of Registration for this mark is attached as **Exhibit B.**

37.     PLR IP is also the owner of the following valid and subsisting federal trademark registrations:

- Reg. No. 3,858,352, issued by the United States Patent and Trademark Office on October 5, 2010, covering "digital cameras";

- Reg. No. 4,304,206, issued by the United States Patent and Trademark Office on March 19, 2013, covering "downloadable computer software for modifying the appearance and enabling transmission of photographs";

- Reg. No. 4,388,462, issued by the United States Patent and Trademark Office on August 20, 2013, for "providing a website that gives computer users the ability to upload, exchange and share photos";

- Reg. No. 4,425,870, issued by the United States Patent and Trademark Office on October 29, 2013, covering "unexposed photographic films; unexposed photographic film cartridges; photographic paper; photosensitive paper"; and

- Reg. No. 4,550,864, issued by the United States Patent and Trademark Office on June 17, 2014, covering "cameras; audio speakers; tablet computers; e-book readers; handheld computers; computers; SD cards; digital photo frames for displaying digital pictures, video clips and music; software for processing images, graphics and text; camera accessories, namely, mounting devices, camera tripods, digital film camera cases, flashes, lenses, lens hoods, filters, plug adaptors, lens caps, and video lights; flash card readers; batteries; ear buds; display screen protectors for electronic devices, namely, smart phones; computer stylus; battery chargers; cable connectors."

A copy of the Certificates of Registration for the foregoing are attached as **Exhibits C-G**, respectively.

## FUJIFILM'S UNLAWFUL ACTIVITIES

38.     In 2011, Polaroid and Fujifilm entered into an agreement whereby Fujifilm agreed to manufacture and produce Polaroid instant cameras and instant film (the "Agreement"). In the Agreement, Fujifilm agreed, *inter alia*, "not to make use of Polaroid's trademarks, brands, names, or trade dress except in connection with Product to be delivered to Polaroid pursuant to this Agreement or upon express written authorization of Polaroid." The packaging that Fujifilm manufactured, printed, and distributed pursuant to the Agreement expressly acknowledged that the Classic Border Logo is a trademark and owned by Counterclaimant PLR IP Holdings, LLC.

39.     In blatant disregard of Polaroid's rights – of which Fujifilm was well aware – Fujifilm recently began manufacturing, sourcing, importing, distributing, marketing, promoting, offering for sale, or selling instant film in interstate commerce that bears a substantially indistinguishable and confusingly similar imitation of Polaroid's Classic Border Logo. Fujifilm offers its infringing products under the name "Instax Square," representative examples of which are depicted below (the "Infringing Products"):





40.     The Infringing Products are substantially indistinguishable from the Classic

Border Logo as depicted in Polaroid's trademark registrations, an example of which is depicted

below:

**Polaroid Registration No. 5,284,186**        **Fujifilm's "Instax Square" Film**



41.     In light of Fujifilm's infringement, Polaroid terminated the Agreement. Within a matter of days thereafter, Fujifilm filed its Complaint.

42.     Fujifilm was familiar with Polaroid's well-known Classic Border Logo when it began designing, manufacturing, sourcing, importing, distributing, marketing, promoting, offering for sale, or selling the Infringing Products. On information and belief, Fujifilm intentionally adopted and used substantially indistinguishable and confusingly similar imitations of the Classic Border Logo knowing that it would mislead and deceive consumers into believing that the Infringing Products were produced, authorized, or licensed by, or originated from Polaroid, when in fact they are not.

43.     The Infringing Products are not manufactured by Polaroid, and Fujifilm is not associated or connected with Polaroid, or licensed, authorized, sponsored, endorsed, or approved by Polaroid in any way.

44.     Polaroid used the Classic Border Logo extensively and continuously before Fujifilm began designing, manufacturing, sourcing, importing, distributing, marketing, promoting, offering for sale, and selling the Infringing Products.

45.     The Infringing Products sold by Fujifilm are similar to, and directly compete with, products sold by Polaroid, and the parties' products are sold through overlapping channels of trade. As but one example, Fujifilm regularly purchases the word "Polaroid" on search engines in an effort to prompt the display of online advertising that will redirect consumers looking for Polaroid's instant-photography products bearing the Classic Border Logo.

46.     Fujifilm began selling the Infringing Products well after Polaroid had established protectable rights in its Classic Border Logo and well after the Classic Border Logo had become famous.

47.     Fujifilm does not need to use Polaroid's Classic Border Logo for technical or other functional reasons, and alternative designs that are practical, feasible, and effective are readily available to Fujifilm. Indeed, the infringing Instax Square film is offered at a retail price much higher than other of Fujifilm's instant film. Moreover, on information and belief the Fujifilm Instax Square film is manufactured in a manner that makes the three white borders along the sides and the top of the rectangle entirely superfluous; their inclusion only serves to increase the manufacturing cost of the infringing film. Preventing Fujifilm from using the Classic Border Logo would thus not put Fujifilm at a significant non-reputation-related disadvantage.

48.     On information and belief, Fujifilm knowingly, grossly, wantonly, and willfully adopted and used a confusingly similar imitation of the Classic Border Logo.

49.     Fujifilm's use of a substantially indistinguishable and confusingly similar imitation of Polaroid's Classic Border Logo is likely to deceive, confuse, and mislead purchasers

and prospective purchasers into believing that the goods sold by Fujifilm are manufactured by, authorized by, or in some manner associated with Polaroid, which they are not.  The likelihood of confusion, mistake, and deception engendered by Fujifilm's misappropriation of Polaroid's Classic Border Logo is causing irreparable harm to the goodwill symbolized by the Classic Border Logo and the reputation for quality that it embodies.

50.     Fujifilm's activities are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers, and others viewing Fujifilm's Infringing Products in an advertisement, online, at the point of sale, or displayed in a post-sale environment are likely—due to Fujifilm's use of a confusingly similar imitation of the Classic Border Logo— to mistakenly attribute Fujifilm's products to Polaroid.  By causing such a likelihood of confusion, mistake, and deception, Fujifilm is inflicting irreparable harm on the goodwill symbolized by the Classic Border Logo and the reputation for innovation and heritage that it embodies.

### FIRST CLAIM FOR RELIEF
**(Counterfeiting)**

51.     Polaroid repeats and incorporates by reference the allegations in the preceding paragraphs.

52.     Counterclaim Defendants are using counterfeit marks, as that term is defined in Section 34(d)(1)(B) of the Lanham Act. Specifically, Counterclaim Defendants have knowingly manufactured, imported, distributed, marketed, promoted, offered for sale, or sold the Infringing Products, which bear spurious marks that are identical with or substantially indistinguishable from the Classic Border Logo.

53.     Counterclaim Defendants' use of spurious marks identical to or substantially indistinguishable from the Classic Border Logo violates 15 U.S.C. § 1114, and Counterclaim

Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Polaroid's goodwill and reputation as symbolized by its federally registered marks, for which Polaroid has no adequate remedy at law.

54.     Counterclaim Defendants are likely to continue causing substantial injury to the public and to Polaroid, and Polaroid is entitled to injunctive relief, an accounting for profits, damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117. Pursuant to 15 U.S.C. § 1117(b), Polaroid is entitled to trebling of the greater of profits or damages, and to prejudgment interest.  Alternatively, pursuant to 15 U.S.C. § 1117(c), Polaroid is entitled to recover statutory damages for counterclaim Defendants' willful use of counterfeit marks.

**SECOND CLAIM FOR RELIEF**
**(Federal Trademark Infringement)**

55.     Polaroid repeats and incorporates by reference the allegations in the preceding paragraphs.

56.     Counterclaim Defendants' use of a confusingly similar imitation of Polaroid's Classic Border Logo is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Counterclaim Defendants' products are manufactured, produced, distributed, endorsed, sponsored, approved, or licensed by Polaroid, or are associated or connected with Polaroid, when in fact they are not.

57.     Counterclaim Defendants have used a mark confusingly similar to Polaroid's federally registered Classic Border Logo in violation of 15 U.S.C. § 1114.  Counterclaim Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally,

injury to Polaroid's goodwill and reputation as symbolized by the registered Classic Border

Logo, for which Polaroid has no adequate remedy at law.

58.     Counterclaim Defendants' actions demonstrate a gross, wanton, and willful intent

to trade on the goodwill associated with Polaroid's federally registered Classic Border Logo to

Polaroid's great and irreparable injury.

59.     Counterclaim Defendants have caused and are likely to continue causing

substantial injury to the public and to Polaroid, and Polaroid is entitled to injunctive relief and to

recover Counterclaim Defendants' profits, actual damages, enhanced profits and damages, costs,

and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

**THIRD CLAIM FOR RELIEF**
**(Federal Unfair Competition)**

60.     Polaroid repeats and incorporates by reference the allegations in the preceding

paragraphs.

61.     Counterclaim Defendants' use of a confusingly similar imitation of the Classic

Border Logo has caused and is likely to cause confusion, deception, and mistake by creating the

false and misleading impression that Counterclaim Defendants' goods are manufactured or

distributed by Polaroid, are affiliated, connected, or associated with Polaroid, or have the

sponsorship, endorsement or approval of Polaroid, when in fact they are not.

62.     Counterclaim Defendants have made false representations, false descriptions, and

false designations of their goods in violation of 15 U.S.C. § 1125(a).  Counterclaim Defendants'

activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of

confusion and deception of members of the trade and public, as well as injury to Polaroid's

goodwill and reputation as symbolized by the Classic Border Logo, for which Polaroid has no

adequate remedy at law.

25

63.     Counterclaim Defendants' actions demonstrate a gross, wanton, and willful intent to trade on the goodwill associated with the Classic Border Logo to the great and irreparable injury of Polaroid.

64.     Counterclaim Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Polaroid.  Polaroid is entitled to injunctive relief and to recover Counterclaim Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

**FOURTH CLAIM FOR RELIEF**
**(Unfair and Deceptive Trade Practices)**

65.     Polaroid repeats and incorporates by reference the allegations in the preceding paragraphs.

66.     Counterclaim Defendants have been and are passing off their goods as those of Polaroid, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Counterclaim Defendants' goods, causing a likelihood of confusion as to Counterclaim Defendants' affiliation, connection, or association with Polaroid; and otherwise damaging Polaroid and the consuming public.  Counterclaim Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of New York General Business Law § 349, as well as the law of the several states, including California, CAL. BUS. & PROF. CODE § 17200, *et seq.* (West 2017); Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 2017); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2017); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (2017); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (2017); Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (2017); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 2017); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 2017); Nebraska, NEB. REV. STAT. §§ 87-301 to

87-306 (2017); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 2017); Ohio,

OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (Baldwin 2017); and Oklahoma, OKLA.

STAT. ANN. tit. 78, §§ 51 to 55 (West 2017).

      67.    Counterclaim Defendants' unauthorized use of a confusingly similar imitation of

the Classic Border Logo has caused and is likely to cause substantial injury to the public and to

Polaroid.  Polaroid therefore is entitled to injunctive relief and to recover damages and, if

appropriate, punitive damages, costs, and reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(Common Law Trademark Infringement and Unfair Competition)**

      68.    Polaroid repeats and incorporates by reference the allegations in the preceding

paragraphs.

      69.    Counterclaim Defendants' acts constitute common law trademark infringement

and unfair competition, and have created and will continue to create a likelihood of confusion to

the irreparable injury of Polaroid unless restrained by this Court.  Polaroid has no adequate

remedy at law for this injury.

      70.    On information and belief, Counterclaim Defendants acted with full knowledge of

Polaroid's use of, and statutory and common law rights to, the Classic Border Logo and without

regard to the likelihood of confusion of the public created by Counterclaim Defendants'

activities.

      71.    Counterclaim Defendants' actions demonstrate a gross, wanton, and willful intent

to trade on the goodwill associated with the Classic Border Logo to the great and irreparable

injury of Polaroid.

      72.    As a result of Counterclaim Defendants' acts, Polaroid has been damaged in an

amount not as yet determined or ascertainable.  At a minimum, however, Polaroid is entitled to

27

injunctive relief, to an accounting of Counterclaim Defendants' profits, to damages, and to costs. In light of the gross, wanton, and willful use of confusingly similar imitations of the Classic Border Logo, and the need to deter Counterclaim Defendants from similar conduct, Polaroid additionally is entitled to punitive damages.

**SIXTH CLAIM FOR RELIEF**
**(Federal Trademark Dilution)**

73.    Polaroid repeats and incorporates by reference the allegations in the preceding paragraphs.

74.    Polaroid has extensively and continuously promoted and used the registered Classic Border Logo both in the United States and throughout the world.  The mark became a famous and well-known symbol of Polaroid's products well before Counterclaim Defendants offered for sale the goods complained of in this Counterclaim.

75.    Counterclaim Defendants are making use in commerce of a mark that dilutes and is likely to dilute the distinctiveness of the Classic Border Logo by eroding the public's exclusive identification of the famous Classic Border Logo with Polaroid, tarnishing and degrading the positive associations and prestigious connotations of the Classic Border Logo, or otherwise lessening the capacity of the Classic Border Logo to identify and distinguish Polaroid's goods.

76.    Counterclaim Defendants' actions demonstrate a gross, wanton, and willful intent to trade on the goodwill associated with the Classic Border Logo or to cause dilution of the Classic Border Logo, to the great and irreparable injury of Polaroid.

77.    Counterclaim Defendants have caused and will continue to cause irreparable injury to Polaroid's goodwill and business reputation, and dilution of the distinctiveness and value of Polaroid's famous and distinctive Classic Border Logo in violation of 15 U.S.C. § 1125(c).  Polaroid therefore is entitled to injunctive relief and to Counterclaim Defendants'

28

profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees

pursuant to 15 U.S.C. §§ 1125(c), 1116, and 1117.

## SEVENTH CLAIM FOR RELIEF
### (State Trademark Dilution and Injury to Business Reputation)

78.     Polaroid repeats and incorporates by reference the allegations in the preceding

paragraphs.

79.     Polaroid has extensively and continuously promoted and used the registered

Classic Border Logo both in the United States and throughout the world, and the mark thereby

became a distinctive, famous, and well-known symbol of Polaroid's goods well before

Counterclaim Defendants offered for sale the goods complained of in this Counterclaim.

80.     Counterclaim Defendants' unauthorized imitation of the Classic Border Logo

dilutes and is likely to dilute the distinctiveness of Polaroid's mark by eroding the public's

exclusive identification of this famous and well-known mark with Polaroid, or tarnishing and

degrading the positive associations and prestigious connotations of the mark, and otherwise

lessening the capacity of the mark to identify and distinguish Polaroid's goods.

81.     Counterclaim Defendants are causing and will continue to cause irreparable injury

to Polaroid's goodwill and business reputation, and dilution of the distinctiveness and value of

Polaroid's famous Classic Border Logo in violation of New York General Business Law § 360-l,

as well as the anti-dilution laws of the several states, including Alabama, ALA. CODE § 8-12-17

(2017); Alaska, ALASKA STAT. §45.50.180 (Michie 2017); Arizona, ARIZ. REV. STAT.

ANN. §44-1448.01 (West 2017); Arkansas, ARK. CODE ANN. § 4-71-213 (2017); California,

CAL. BUS. & PROF. CODE § 14247 (West 2017); Connecticut, CONN. GEN. STAT. ANN §

35-11i(c) (West 2017); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2017); Florida, FLA. STAT.

ANN. § 495.151 (West 2017); Georgia, GA. CODE ANN. § 10-1-451 (2017); Hawaii, HAW.

29

REV. STAT. ANN. § 482-32 (Michie 2017); Idaho, IDAHO CODE § 48-513 (Michie 2017);

Illinois, 765 ILL. COMP. STAT. ANN. 1036/65 (2017); Iowa, IOWA CODE ANN. § 548.113

(West 2017); Indiana, IN. CODE 24-2-13.5 (West 2017); Kansas, KAN. STAT. ANN. § 81-214

(2017); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (West 2017); Maine, ME. REV. STAT.

ANN. tit. 10, § 1530 (West 2017); Massachusetts, MASS. GEN. LAWS. ANN. ch. 110H, § 13

(West 2017); Minnesota, MINN. STAT. ANN. § 333.285 (West 2017); Mississippi, MISS.

CODE. ANN. § 75-25-25 (2017); Montana, MONT. CODE ANN. § 30-13-334 (2017);

Nebraska, NEB. REV. STAT. ANN. §87-140 (Michie 2017); Nevada, NEV. REV. STAT.

600.435 (2017); New Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (2017); New Jersey, N.J.

STAT. ANN. 56:3-13.20 (West 2017); New Mexico, N.M. STAT. ANN. § 57-3B-15 (Michie

2017); Oregon, O.R.S. § 647.107 (2017);  Pennsylvania, 54 PA. CONS. STAT. ANN. § 1124

(West 2017); Rhode Island, R.I. GEN. LAWS § 6-2-12 (2017); South Carolina, S. C. CODE

ANN. § 39-15-1165 (2017) Tennessee, TENN. CODE ANN. § 47-25-513 (2017); Texas, TEX.

BUS. & COM. CODE ANN. § 16.29 (Vernon 2017); Utah, UT. CODE ANN. §70-3a-403

(2017); Washington, WASH. REV. CODE ANN. § 19.77.160 (West 2017); West Virginia, W.V.

STAT. ANN. 47-2-13 (Michie 2017); and Wyoming, WYO. STAT. ANN. § 40-1-115 (Michie

2017).  Polaroid therefore is entitled to injunctive relief, damages, and costs, as well as, if

appropriate, enhanced damages and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Polaroid prays that:

1.      Counterclaim Defendants and all of their agents, officers, employees,

representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through,

or under authority from Counterclaim Defendants, or in concert or participation with

Counterclaim Defendants, and each of them, be enjoined permanently, from:

30

a.      manufacturing, distributing, advertising, marketing, promoting, offering for sale or selling the Infringing Products;

b.      using any trademark, logo, design, or source designation of any kind on or in connection with Counterclaim Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the Classic Border Logo;

c.      using any trademark, logo, design, or source designation of any kind on or in connection with Counterclaim Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods are produced or provided by Polaroid, are sponsored or authorized by Polaroid, or are in any way connected or related to Polaroid;

d.      using any trademark, logo, design, or source designation of any kind on or in connection with Counterclaim Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks of Polaroid;

e.      passing off, palming off, or assisting in passing off or palming off Counterclaim Defendants' goods as those of Polaroid, or otherwise continuing any and all acts of unfair competition as alleged in this Counterclaim; and

f.      manufacturing, distributing, advertising, marketing, promoting, offering for sale or selling the counterfeit goods or other goods bearing

counterfeit and/or confusingly similar imitations of the Classic Border Logo.

2.     Counterclaim Defendants be ordered to recall and retrieve all products bearing the Classic Border Logo or any counterfeit and/or other confusingly similar variation thereof, which have been shipped by Counterclaim Defendants or under their authority, to any store or customer, including, but not limited to, any retail store, marketer, distributor, or distribution center, and also to deliver to each such store or customer, a copy of this Court's order as it relates to said injunctive relief against Counterclaim Defendants;

3.     Counterclaim Defendants be ordered to deliver up for impoundment and for destruction all boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery, or other materials in the possession, custody, or under the control of Counterclaim Defendants that are found to adopt, use, feature, infringe, or dilute any of Polaroid's trademarks or that otherwise unfairly compete with Polaroid or Polaroid's products;

4.     Counterclaim Defendants be compelled to account to Polaroid for any and all profits derived by Counterclaim Defendants from the sale or distribution of Infringing Products or counterfeit goods as described in the Counterclaim;

5.     Polaroid be awarded all damages caused by the acts forming the basis of this Counterclaim;

6.     Based on Counterclaim Defendants' knowing and intentional use of counterfeit and/or confusingly similar imitations of Polaroid's Classic Border Logo, the damages award be trebled and the award of Counterclaim Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a) and (b), or alternatively, and at Polaroid's election, pursuant to 15 U.S.C.

§ 1117(c), for any goods bearing a counterfeit mark, Polaroid be awarded statutory damages for Counterclaim Defendants' willful use of a counterfeit mark;

7.     Counterclaim Defendants be required to pay to Polaroid the costs and reasonable attorneys' fees incurred by Polaroid in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Counterclaim;

8.     Based on Counterclaim Defendants' gross, wanton, and willful infringement, counterfeiting, and/or dilution of Polaroid's marks, and to deter such conduct in the future, Polaroid be awarded punitive damages; and

9.     Polaroid have such other and further relief as the Court may deem just.

### JURY TRIAL DEMAND

Polaroid respectfully demands a trial by jury on all of its counterclaims and issues so triable.

### ANSWER TO DECLARATORY JUDGMENT COMPLAINT

### PRELIMINARY STATEMENT

In response to the unnumbered "Preliminary Statement" Defendants admit that: (1) Polaroid is a great American success story; (2) Polaroid launched its instant-print camera in 1947 and that the company enjoyed considerable commercial success for decades; (3) they made bankruptcy filings in 2001 and 2008; (4) they possess federal trademark registrations for the Classic Border Logo; (5) they objected to certain of Plaintiff's products as infringing the Classic Border Logo and demanded that Plaintiff make royalty payments for use of that intellectual property; and (6) Fujifilm launched its infringing instant film product line in April 2017. Defendants deny the remaining allegations contained in the unnumbered "Preliminary Statement."

33

## NATURE OF THE ACTION

1.      Defendants admit that Plaintiff filed a Complaint for Declaratory Judgment in the U.S. District Court for the Southern District of New York on November 13, 2017, state that the referenced Complaint speaks for itself, and otherwise deny the allegations contained in Paragraph 1 of the Complaint.

2.      Defendants admit that they possess federal trademark registrations for the well-known Classic Border Logo, admit that they previously objected to certain of Plaintiff's products as infringing Polaroid's Classic Border Logo, and otherwise deny the allegations contained in Paragraph 2 of the Complaint. Defendants further state that the referenced registrations speak for themselves.

3.      Defendants state that the referenced Complaint speaks for itself, and otherwise deny the allegations contained in Paragraph 3 of the Complaint.

## PARTIES

4.      Defendants are without knowledge of information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.      Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6.      Defendants admit the allegations contained in Paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7.      Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8.      Defendants admit that this Court has subject matter jurisdiction.

9.      Defendants admit that this Court has personal jurisdiction over Defendants.

10.     Defendants admit that venue is proper in this District.

## FACTUAL BACKGROUND

11.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants admit that Plaintiff's Instax Square film products were launched in April 2017. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of the Complaint.

16.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 16 of the Complaint. Defendants deny the allegations contained in the second sentence of Paragraph 16 of the Complaint.

17.     Defendants admit that, in 2008, Polaroid Corporation published a statement announcing that it would cease manufacturing instant film for Polaroid cameras in its own factories, but otherwise deny the allegations contained in Paragraph 17 of the Complaint. Defendants further state that their predecessors and licensees have continuously manufactured and distributed instant film for Polaroid cameras since 2008 to the present.

18.     Defendants admit that they sent Plaintiff a letter on January 13, 2017, a true and correct copy of which is attached to the Complaint as Exhibit B, and further state that this letter

speaks for itself. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of the Complaint.

19.     Defendants admit that, on or after January 13, 2017, Plaintiff's counsel and Defendants' counsel engaged in telephonic communications.  Defendants further admit that they sent Plaintiff a second letter on March 24, 2017, a true and correct copy of which is attached to the Complaint as Exhibit C, and further state that the letter speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint.

20.     Defendants admit that they received a letter from Plaintiff's counsel dated April 3, 2017, a true and correct copy of which is attached to the Complaint as Exhibit D, and further state that the letter speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 20 of the Complaint.

21.     Defendants admit the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants admit the allegations contained in Paragraph 22 of the Complaint.

23.     Defendants admit that they sent Plaintiff a letter dated June 6, 2017, and further state that the letter speaks for itself. Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.     Defendants admit that Plaintiff and Defendants engaged in direct communications concerning, among other things, a possible face-to-face meeting.  Defendants further admit that they sent Plaintiff a letter dated August 9, 2017, a true and correct copy of which is attached to the Complaint as Exhibit E, and further state that the letter speaks for itself. Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.     Defendants admit that Plaintiff and Defendants engaged in direct communications concerning settlement, but otherwise deny the allegations contained in Paragraph 25 of the Complaint.

26.     Defendants admit that Plaintiff seeks declaratory relief and that an actual and justiciable controversy exists between Defendants and Plaintiff concerning Plaintiff's manufacture and sale of Instax Square products that infringe Polaroid's Classic Border Logo, but otherwise deny the allegations contained in Paragraph 26 of the Complaint.

## FIRST CLAIM FOR RELIEF

27.     Defendants repeat and reassert their responses to Paragraphs 1-26 of the Complaint.

28.     Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations contained in Paragraph 29 of the Complaint.

30.     Defendants deny the allegations contained in Paragraph 30 of the Complaint.

31.     Defendants admit that Plaintiff seeks declaratory relief in its Complaint, but otherwise deny the allegations contained in Paragraph 31 of the Complaint.

## SECOND CLAIM FOR RELIEF

32.     Defendants repeat and reassert their responses to Paragraphs 1-31 of the Complaint.

33.     Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.     Defendants deny the allegations contained in Paragraph 34 of the Complaint.

35.     Defendants admit that Plaintiff seeks declaratory relief in its Complaint, but otherwise deny the allegations contained in Paragraph 35 of the Complaint.

### THIRD CLAIM FOR RELIEF

36.     Defendants repeat and reassert their responses to Paragraphs 1-35 of the Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     Defendants admit that Plaintiff seeks declaratory relief in its Complaint, but otherwise deny the allegations contained in Paragraph 38 of the Complaint.

### FOURTH CLAIM FOR RELIEF

39.     Defendants repeat and reassert their responses to Paragraphs 1-38 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.     Defendants admit that they have asserted their ownership of trademark registrations covering the Classic Border Logo, but otherwise deny the allegations contained in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations contained in Paragraph 42 of the Complaint.

### FIFTH CLAIM FOR RELIEF

43.     Defendants repeat and reassert their responses to Paragraphs 1-42 of the Complaint.

44.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the first three sentences of Paragraph 44 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46.      Paragraph 46 of the Complaint states a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny any suggestion that the Classic Border Logo is functional or otherwise unprotectable as a trademark or trade dress.

47.      Defendants deny the allegations contained in Paragraph 47 of the Complaint.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the grounds for relief enumerated in the Complaint.  Defendants further deny that Plaintiff is entitled to any relief.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

48.      One or more of the causes of action set forth in Plaintiff's Complaint fail to state claims upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to Join Indispensable Party)

49.      Fujifilm Corporation is an indispensable party that is required to be joined as a plaintiff under Fed. R. Civ. P. 19(a), because in its absence, the Court cannot accord complete relief to Defendants.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

50.      The causes of action set forth in Plaintiff's Complaint are barred by the doctrine of licensee estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

51.      The causes of action set forth in Plaintiff's Complaint are barred by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
**(Acquiescence)**

52.     The causes of action set forth in Plaintiff's Complaint are barred by the doctrine of acquiescence.

## SIXTH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

53.     The causes of action set forth in Plaintiff's Complaint are barred by the doctrine of unclean hands.

DATED:  February 1, 2018

Respectfully submitted,

*/s/ R. Charles Henn Jr.*
William H. Brewster (WB 2245)
R. Charles Henn Jr. (RH 1224)
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: bbrewster@kilpatricktownsend.com
           chenn@kilpatricktownsend.com

Olivia A. Harris (OH 1983)
1114 Avenue of the Americas
New York, New York 10036
Tel: 212-775-8700
Fax: 212-775-8800
Email: oharris@kilpatricktownsend.com

Attorneys for Defendants & Counterclaimants